IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| LORA KING, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 3:10-CV-0042-BH |
| § | |
| LIFE SCHOOL, et. al., § | |
| § | |
| Defendants. § | |

## MEMORANDUM OPINION AND ORDER

Pursuant to the order of reassignment, filed May 12, 2010, and the consent of the parties, this matter was transferred for the conduct of all further proceedings and entry of judgment. Before the Court are *Defendant Life School's Motion for Summary Judgment*, filed January 28, 2011 (doc. 41). Based on the relevant filings, evidence, and applicable law, the motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Lora King, an African-American female, sues her former employer, Life School, its superintendent, and its principal for race discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"). (Comp. at 1.) The civil cover sheet accompanying her complaint also alleges gender discrimination in violation of Title VII and discrimination in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA").

Plaintiff began her employment with the school in 2002 as an aide and was reassigned in 2005 to a school secretary position. (Mot. App., p. 1.) In the 2007-2008 school year, her duties as secretary included coordination of employee attendance and substitute teachers. (*Id.* at 1-2.) This

role required her to track employee absences and prepare monthly reports for payroll purposes. (*Id.* at 2.) Often, however, she submitted inaccurate reports and missed the monthly deadlines for the submission of the reports, thereby causing a delay in the monthly payroll process. (*Id.*) The school's human resources ("HR") coordinator tried to help her by providing spreadsheet and record-keeping training, but her performance did not improve. (*Id.*)

In the 2008-2009 school year, Plaintiff was reassigned to the position of registrar. (*Id.* at 2-3, 36.) In this position, she was responsible for the maintenance and production of student transcripts and campus purchase orders. (*Id.*) She was still responsible for recording attendance and coordinating substitute teachers, but only for the upper grades of the secondary school. Prior to that, she was also responsible for the six grades of the elementary school. (*Id.*) Even with this reduced workload, she continued to submit late and inaccurate reports to the HR coordinator. (*Id.* at 2-3, 7-30, 37.) With an increase in her own workload, the HR coordinator was eventually forced to request the principal to reassign Plaintiff's attendance reporting duties to another employee. (*Id.* at 3, 37.)

Plaintiff struggled with her other registrar duties as well. (*Id.* at 37, 86-87, 92-93.) Parents complained that the transcripts she had processed were either unsigned or unstamped or were missing information. (*Id.* at 37, 86.) On one occasion, the assistant principal explained the exam requirements to Plaintiff so she could accurately instruct a student on them. (*Id.* at 86-87.) From then on, Plaintiff refused to address that subject with students, instead referring them to the assistant principal's office. (*Id.*) The assistant principal was eventually forced to assume Plaintiff's transcript duties. (*Id.*)

Plaintiff also struggled with her purchase order duties, often submitting inaccurate purchase orders because of her inability to use the electronic spreadsheet. (*Id.* at 37, 92-93.) On one

occasion, she submitted a handwritten purchase order form with incorrect information instead of submitting an electronic document as instructed. (*Id.* at 92.) Even after she was trained and provided additional assistance in the use of electronic forms and computer programs, she continued to struggle with their use. (*Id.* at 93.) On several occasions, she failed to timely submit purchase orders, resulting in the school running out of needed supplies. (*Id.*) Plaintiff attributed her tardiness to her busy schedule and commitments outside her work position. (*Id.* at 2.) Her supervisors observed that she spent a great deal of her work time on volunteer school activities without the principal's consent, and often left the office without informing him of her whereabouts. (*Id.* at 37, 87, 98.)

In the spring of 2009, Plaintiff underwent a medical procedure and was scheduled to return on a specific date. (*Id.* at 38.) She returned to work several days late without informing the principal that she would not be returning on the previously scheduled date. (*Id.*) In June 2009, Plaintiff's performance appraisal assessed her as kind and generous person who provided volunteer assistance with multiple organizations on campus, but assigned a "needs improvement" rating in all but two of the performance areas. (*Id.* at 83.) That same month, the principal informed her that he had decided not to renew her at-will employment contract for the next school year. (*Id.* at 38.) Plaintiff then met individually with the chief academic officer and the superintendent to express her grievance with this decision. (*Id.* at 98, 100.) The superintendent offered to recommend her for other positions within the school, but she would not consider them. (*Id.* at 100.) In July 2009, she presented her protest at a school board of directors meeting, but the board did not act on her presentation because of her failure to file a formal grievance with the school. (*Id.* at 5.) Following Plaintiff's termination, her registrar position was restructured to require increased skills, and it was

filled by a Caucasian female who had previously worked in the school's administrative office. (*Id.*)

In September 2009, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC"), alleging race discrimination in violation of Title VII. (*Id.* at 109-11.) The EEOC dismissed her complaint and issued her a right to sue letter in October 2009. (*Id.* at 112-13.) In January 2010, Plaintiff filed this action against the school, its superintendent, and its principal, alleging that she was wrongfully terminated without "prior progressive discipline, prior warning, or corrective discipline," while employees who were Caucasian, less senior, and younger were retained despite receiving warnings. (doc. 1, p. 1.) She also alleges that she had a plethora of duties that were later given to several individuals. (*Id.*) The principal allegedly retaliated against her for raising concerns about inappropriate things in the school's administration such as discrimination, and the superintendent allegedly accepted the retaliation despite being aware of her good character. (*Id.*) On June 24, 2010, Plaintiff's Title VII claims against the individual defendants were dismissed with prejudice. (doc. 25.) The school now moves to dismiss her Title VII race discrimination claim against it.

## II. EVIDENTIARY OBJECTIONS

The school moves to strike exhibits 1-9, 11, and 14 attached to Plaintiff's response as unauthenticated. (doc. 50.) The school additionally objects that exhibits 2-8 and 14 were not produced in discovery; exhibits 2-6 and 8 are inadmissible hearsay; exhibits 1, 7, 9, 11, and 14 lack a proper foundation; and exhibits 9 and 14 are not best evidence under Fed. R. Evid. 1002. (*Id.*)

Authentication is a condition precedent to admissibility. Fed. R. Evid. 901(a). Some types of evidence are self-authenticating and require no extrinsic foundation for admission, such as public documents under seal, certified copies of public documents, official publications, and acknowledged

documents. *See* Fed. R. Evid. 902; *McIntosh v. Partridge*, 540 F.3d 315, 322 n. 6 (5th Cir. 2008). Evidence that is not self-authenticating does not require conclusive proof of authenticity, only some evidence sufficient to support a finding that the evidence is what the proponent claims it to be. *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993).

Here, exhibits 1-9, 11, and 14 appear to be a staff handbook for the 2008-2009 school year; email exchanges between Plaintiff and the school staff; correspondence from Plaintiff to school personnel after her termination; a substitute attendance log; a 2005-2006 performance appraisal assessing Plaintiff as exceeding or meeting expectations; and letters from parents, students, and co-workers expressing their appreciation of Plaintiff's hard work, dedication, and kind personality. These exhibits are neither self-authenticating nor supported by evidence of authentication. Although some of the exhibits appear to be the school's own documents, this is insufficient circumstantial evidence of authenticity since Plaintiff offered nothing to inform the court of the circumstances surrounding their discovery. *See Arce*, 997 F.2d at 1128 (citing *United States v. Smith*, 918 F.2d 1501, 1510 (11th Cir. 1990)). The school's motion to strike these exhibits as unauthenticated is **GRANTED** and the additional objections to these exhibits are **DENIED** as moot.[1]

### III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings and evidence on file show that no genuine issue exists as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "[T]he substantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists

---

[1] Consideration of the exhibits would not affect the outcome because they do not evidence an intent or motive to discriminate based on race.

"if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Id*. The movant makes a showing that there is no genuine issue of material fact by informing the court of the basis of its motion and by identifying the portions of the record which reveal there are no genuine material fact issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The pleadings, discovery and disclosure materials on file, and affidavits, if any, must demonstrate that no genuine issue of material fact exists. Fed. R. Civ. P. 56(c).

Once the movant makes this showing, the non-movant must then direct the court's attention to evidence in the record sufficient to establish that there is a genuine issue of material fact for trial. *Celotex*, 477 U.S. at 324. To carry this burden, the non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-movant must show that the evidence is sufficient to support a resolution of the factual issue in his favor. *Anderson*, 477 U.S. at 249.

While all of the evidence must be viewed in a light most favorable to the motion's opponent, *id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)), neither conclusory allegations nor unsubstantiated assertions satisfy the non-movant's summary judgment burden, *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc); *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Summary judgment in favor of the movant is proper if, after adequate time for discovery, the motion's opponent fails to establish the existence of an element essential to his case and as to which he will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322-23.

Generally, the courts liberally construe the pleadings of a *pro se* plaintiff. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (per curiam); *Miller v. Stanmore*, 636 F.2d 986, 988 (5th

Cir. 1981); *Martin v. United States Post Office*, 752 F. Supp. 213, 218 (N.D. Tex. 1990). However, the courts have no obligation under Fed. R. Civ. P. 56 "to sift through the record in search of evidence to support a party's opposition to summary judgment." *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 164 (5th Cir. 2006) (quoting *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)). Instead, a party opposing summary judgment must "identify specific evidence in the record" that supports the challenged claims and "articulate the precise manner in which that evidence supports [a challenged] claim." *Ragas*, 136 F.3d at 458 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## IV. TITLE VII RACE DISCRIMINATION CLAIM

The school moves for summary judgment on Plaintiff's Title VII race discrimination claim against it. (Mot. Br. at 8-16.)

**A. Analytical Framework**

Title VII prohibits an employer from discriminating against an individual with respect to the compensation, terms, conditions, or privileges of her employment based on her race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2(a)(1). Discrimination claims under Title VII may be proved through either direct evidence, statistical proof, or the framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Under that framework, a plaintiff must first establish a prima facie case of discrimination by showing that she (1) belongs to a protected group; (2) was qualified for her position; (3) suffered an adverse employment action; and (4) was replaced by someone outside her protected class or was treated less favorably than similarly situated employees outside the protected class. *Id.* (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005));

*Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008).

If the plaintiff establishes a *prima facie* case, an "inference of intentional discrimination" arises. *Lee v. Kansas City Southern Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009). The burden of production then shifts to the defendant to articulate a legitimate, non-discriminatory reason for the challenged employment action. *Okoye v. Univ. of Texas Houston Health Sci. Ctr.*, 245 F.3d 507, 512 (5th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 142 (2000)). Once the defendant has responded with a legitimate, non-discriminatory reason,

> the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive[s] alternative).

*Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 341 (5th Cir. 2005) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)). Under the pretext alternative, the plaintiff must introduce "some evidence, whether circumstantial or direct, that permits the jury to believe that the reason was false and that illegal discrimination was the actual reason." *Nichols v. Lewis Grocer*, 138 F.3d 563, 566 (5th Cir. 1998). Under the mixed-motive alternative, a plaintiff need only present sufficient evidence for a reasonable jury to conclude that race, color, sex, religion, or national origin was a motivating factor for the employment practice at issue. *Desert Palace Inc. v. Costa*, 539 U.S. 90, 101 (2003).

**B. Prima Facie Case**

The school argues that Plaintiff cannot establish the fourth prong of her prima facie case because she cannot establish that she was treated differently than similarly situated employees. (Mot. Br. at 8-12.) As discussed, however, the fourth prong of a prima facie case of discrimination

can be established by showing one of two things — that the employee alleging discrimination was replaced by someone outside her protected class or that she was treated differently than similarly situated employees. *McCoy*, 492 F.3d at 556; *Fahim*, 551 F.3d at 350. In this case, the school admits that Plaintiff's position was restructured and filled by a Caucasian female employee. (Mot. App. at 5.) The school has therefore failed to meet its summary judgment burden to show that Plaintiff cannot establish a prima facie case of discrimination.

## C. Legitimate Non-Discriminatory Reason

Even if Plaintiff can establish a prima facie case, the school proffers evidence showing that it had a legitimate non-discriminatory reason for her termination. (Mot. Br. at 12-13.) If an employee establishes a prima facie case of discrimination, the burden of production then shifts to the employer to articulate a legitimate, non-discriminatory reason for its actions. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). The proffered reason need not be persuasive or even credible, only legitimate and non-discriminatory. *Bodenheimer v. PPG Indus.*, 5 F.3d 955, 958 (5th Cir. 1993).

The evidence offered by the school shows that Plaintiff had performance problems that increased her co-workers' workload, caused delay in payroll processing, caused the school to run out of needed supplies, and generated parent complaints. (Mot. App. at 1-3, 7-30, 36-37, 86-87, 92-93.) The evidence also shows that she struggled with the use of electronic forms and computer programs even after training; took unauthorized leave; performed volunteer school activities during her work hours without authorization; and showed reluctance to accept direction from her supervisor. (*Id.* at 2, 37-38, 87, 92-93, 98.) The school points out that it terminated Plaintiff based on this conduct and offers evidence showing that it terminated five Caucasian paraprofessionals for

similar reasons. (*Id.* at 4-5.) The school has met its summary judgment burden. *See Faruki v. Parsons S.I.P., Inc.*, 123 F.3d 315, 320 (5th Cir. 1997) (poor job performance, limited technical knowledge, inefficiency, inability to complete assigned tasks, and difficulty working with others are legitimate, non-discriminatory reasons for termination). The burden now shifts to Plaintiff to raise a genuine issue of material fact by showing either that the proffered reasons are a pretext for discrimination or that race was a motivating factor in the school's termination decision.

### D. Pretext/Mixed Motives

Plaintiff essentially disputes the school's assessment of her performance with unsworn assertions, and fails to provide any evidence sufficient for a jury finding of pretext or discriminatory motive. *See Steele v. SGS-Thomson Microelectronics, Inc.*, 962 F. Supp. 972, 978 (N.D. Tex. 1997). In fact, she admits in her deposition testimony that she has no tangible evidence of discrimination. (Mot. App. at 124-25.) The two witnesses she identified as observers of the alleged discrimination state in affidavits that they did not witness anything evidencing discrimination against her. (*Id.* at 125, 132, 137, 139.) Her disagreement with the school's view of her performance is not sufficient for a jury finding of pretext or discriminatory motive. "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive." *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1997).

Plaintiff also cites authority holding that shifting and changing justifications which indicate an after-the-fact rationalization for the former employee's termination could be sufficient evidence of pretext. *See e.g. E.E.O.C. v. Ethan Allen, Inc.*, 44 F.3d 116, 120 (2d Cir. 1994); *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 171 (2d. Cir. 1993); *Washington v. Garrett*, 10 F.3d 1421, 1434 (9th Cir. 1993). In this case, however, she has not brought forward evidence to show that the non-

discriminatory reason was stated only after the allegation of discrimination, or that the school has shifted and changed its justifications for terminating her. Because Plaintiff has failed to identify any evidence of pretext or discriminatory motive, her Title VII race discrimination claim against the school, the school's motion is granted.

## V. CONCLUSION

The school's motion for summary judgment is **GRANTED**, and Plaintiff's Title VII race discrimination claim against it is **DISMISSED** with prejudice. Remaining for trial are her Title VII retaliation claim and her ADEA claims, and possibly remaining for trial are her Title VII gender discrimination claim and her USERRA claim.

**SO ORDERED** on this 26th day of April, 2011.

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE